## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| _____ )<br>THE HERSHEY COMPANY and )<br>HERSHEY CHOCOLATE & )<br>CONFECTIONERY CORPORATION, )<br>  )<br>Plaintiffs, )<br>  )<br>v. )<br>  )<br>FRIENDS OF STEVE HERSHEY and )<br>STEVE HERSHEY, )<br>  )<br>Defendants. )<br>_____) | Civil Action No. _____ |

## COMPLAINT

Plaintiffs The Hershey Company and Hershey Chocolate & Confectionery Corporation ("HC&CC") (hereinafter collectively referred to as "Hershey"), for their complaint against defendants Friends of Steve Hershey ("Friends") and State Senator Steve Hershey ("Senator Hershey," collectively with Friends, "Defendants") for trademark infringement, trademark dilution, false designation of origin and false endorsement and breach of contract, plead and allege as follows:

## NATURE AND BASIS OF THE ACTION

1.     Hershey is bringing this action to stop Senator Steve Hershey and his campaign from using the famous trade dress of the Hershey's chocolate bar in connection with Senator Hershey's campaign activities.  Hershey has tried to resolve this matter outside of court and Senator Hershey even promised that he would cease use of the Hershey's trade dress, yet Senator Hershey continues to use the famous Hershey's trade dress to promote his campaign.  Senator

Hershey's use of this trade dress is a blatant attempt to use the fame and equity that plaintiffs have built in the Hershey's trade dress to draw more attention to his campaign:

 

2.     Hershey does not object to Defendants using Senator Hershey's name or to the substance of any political communication in which he or his campaign may choose to engage. Hershey does object, however, to Defendants adopting a design that uses the Hershey Trade Dress beyond any manner permissible under law and which Defendants previously agreed not to use.

3.     This action is brought by Hershey against Defendants under the Lanham Act, 15 U.S.C. §§ 1114 and 1125, and state law, seeking preliminary and permanent injunctive relief, profits, damages and other relief relating to Defendants' unauthorized use of Hershey's distinctive and famous trade dress as a trade dress and logo for Senator Hershey's past and ongoing campaigns and campaign fundraising in a manner that falsely indicates to consumers that Hershey has sponsored, endorsed, authorized or otherwise is associated with Senator Hershey, his campaigns or Defendants' fundraising for the campaigns.

4.     Hershey is the owner of the well-known and famous HERSHEY'S® trademark used on candy, chocolate, confectionery and cocoa as well as other products, which has been in

continuous use for over a century.  Hershey also has long established rights in a trade dress comprising a dark brown or dark maroon background color  – commonly referred to as "Hershey maroon" – and silver or other light-colored block text for the word mark HERSHEY'S (as well as other designations that play on the term HERSHEY'S), often with smaller text below the word mark HERSHEY'S (the "Hershey Trade Dress").  The Hershey Trade Dress, which is used in connection with Hershey's iconic HERSHEY'S milk chocolate bar, Hershey's corporate logo and in other ways, is protected by numerous federal registrations and by virtue of Hershey's extensive use of the mark throughout the United States and the world for many decades.

5.      Defendants have used a design that is confusingly similar to, and a colorable imitation, of the Hershey Trade Dress as the trade dress and logo for Senator Hershey's past campaigns and fundraising for the campaigns.  When Hershey objected, Defendants agreed not to engage in such infringing activities in future campaigns.  In January 2014, when it came to Hershey's attention that Defendants were again using a trade dress and logo that are confusingly similar to and a colorable imitation of, the Hershey Trade Dress, Hershey again objected to Defendants.  Notwithstanding Defendants' prior agreement not to do so, Defendants recently informed Hershey that they intend to use an infringing design for Senator Hershey's current campaign and fundraising for the campaign, which they are already using in this Judicial District.

6.      Defendants' use of Hershey's distinctive and famous trade dress infringes the Hershey Trade Dress, as described more fully herein, unlawfully trades on the goodwill and reputation Hershey has established through its use and promotion of its trade dress, and is likely to cause consumers, purchasers and others to be confused or mistaken into believing that Hershey has in some way sponsored, endorsed, authorized or otherwise is associated with Senator Hershey, his campaign and fundraising for his campaign.  In addition, Defendants'

extensive uses of the Hershey Trade Dress dilutes that distinctive and famous trade dress.

7.      Unless such acts of trademark infringement, trademark dilution, false designation of origin and false endorsement, and breach of contract are enjoined, Hershey will suffer irreparable injury for which there is no adequate remedy at law.

## PARTIES

8.      The Hershey Company is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 100 Crystal A Drive, Hershey, Pennsylvania 17033.  The Hershey Company is a major manufacturer and seller of chocolate and candy confectionery and chocolate-related grocery products and snacks, including the well-known and famous HERSHEY'S milk chocolate bar as well as numerous other chocolate, cocoa, candy and snack products that bear the famous Hershey Trade Dress.

9.      HC&CC is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 4860 Robb Street, Wheat Ridge, Colorado 80033.  HC&CC is a wholly-owned subsidiary of The Hershey Company.  HC&CC owns and has licensed The Hershey Company to use the Hershey Trade Dress upon which this lawsuit is based.

10.     On information and belief, Defendant Friends of Steve Hershey is organized and existing under the laws of the State of Maryland, with its principal place of business at 104 Wye View Road, Queenstown, Maryland 21658.  On information and belief, Friends is in the business of, *inter alia*, raising funds for the state senate campaign of Senator Hershey, including in the State of Maryland and this Judicial District.

11.     On information and belief, Defendant Steve Hershey is a citizen and resident of the State of Maryland and is a state senator for Maryland's 36th District.

## JURISDICTION AND VENUE

12.     The Court has subject matter jurisdiction over the trademark infringement, trade-mark dilution, false designation of origin and false endorsement claims pursuant to the Lanham Act, 15 U.S.C. § 1121, and 28 U.S.C. §§ 1331, 1332 and 1338(a) & (b).  The Court has subject matter jurisdiction over the claims arising under state law pursuant to 28 U.S.C. § 1332, because, on information and belief, there is complete diversity of citizenship between Plaintiffs and Defendants and because the amount in controversy exceeds $75,000, exclusive of interest and costs.  The Court also has supplemental jurisdiction over the claims arising under state law pursuant to 28 U.S.C. § 1367.

13.     The Court has personal jurisdiction over Defendants because, on information and belief, they are citizens of the State of Maryland and are present and doing business in the State of Maryland, either directly or through their agents.

14.     Venue is appropriate in this Court pursuant to 28 U.S.C. § 1391 because Defen-dants are subject to personal jurisdiction in this Judicial District and because a substantial part of the events giving rise to Plaintiffs' claims occurred in this Judicial District.

## ALLEGATIONS COMMON TO ALL CLAIMS

**Hershey and Its Famous Trade Dress**

15.     Hershey manufactures and sells candy, chocolate, confectionery, cocoa, snacks and other products under the well-known and famous HERSHEY'S trademark, which is owned by HC&CC.  Hershey also has long established rights in a design mark consisting of a dark brown or dark maroon background color – commonly referred to as "Hershey maroon" – and a silver or other light-colored font for the word mark HERSHEY'S (as well as other designations that play on the term HERSHEY'S), often with smaller text below the word mark HERSHEY'S

(the "Hershey Trade Dress").

16.     The Hershey Trade Dress and various elements thereof are protected by federal trademark registrations owned by HC&CC, including United States Registration Nos. 3,631,319, 916,802, 1,731,421, 3,572,554, 3,742,493, 3,742,508, 1,775,164 and others, many of which are incontestable under the Lanham Act.  Additional details regarding these and other registrations covering the Hershey Trade Dress (together, the "Hershey Trade Dress Registrations") are set forth immediately below, and the registration certificates for various registrations covering the Hershey Trade Dress are attached as Exhibit A hereto.

| MARK | REGISTRATION NUMBER | CLASS, GOODS & SERVICES |
|---|---|---|
| HERSHEY'S and Design | 3,631,319 | (Int'l Class: 30) Candy; chocolate |
| HERSHEY'S and Design | 916,802 | (Int'l Class: 30) Milk chocolate, milk chocolate with almonds, cocoa, chocolate flavored syrup,  sweet chocolate, and semi-sweet chocolate |
| HERSHEY'S and Design | 1,731,421 | (Int'l Class: 30) Candy |
| HERSHEY'S (Stylized) | 3,572,554 | (Int'l Class: 30) Candy; candy bars; chocolate; chocolate bars; chocolate candies; chocolate chips; chocolate syrup; chocolate topping; cocoa; confectionery chips for baking; cookies |

| HERSHEY'S COCOA and Design | 3,742,493 | (Int'l Class: 30) Cocoa |
|---|---|---|
| HERSHEY'S SYRUP and Design | 3,742,508 | (Int'l Class: 30) Flavoring syrup; topping syrup |
| HERSHEY'S FOOD SERVICE and Design | 1,775,164 | (Int'l Class: 16) Recipe brochures and counter-top point-of-sale and merchandising materials including menu cards, table cards, tent cards for use in the food service industry |
| HER and Design | 3,181,769 | (Int'l Class: 30) Ready-to-eat snack food bars consisting primarily of pretzels, candied nuts, and/or candy; bakery goods, namely, brownies, snack cakes, cookies, biscuits, wafers; granola based, cereal based and grain based snack foods; ready to eat cereal derived food bars; candy; chocolate, baking chocolate, cocoa, cocoa mixes, flavoring syrup, chocolate syrup, confectionery chips and bits for baking and chocolate toppings |

| | | |
|---|---|---|
| HERSHEY'S and Design | 3,158,717 | (Int'l Class: 16) Announcement cards in the nature of paper candy wrappers<br>(Int'l Class: 30) Candy |
| HERSHEY'S COOKIES 'N' CREME (Stylized) | 2,087,154 | (Int'l Class: 30) Candy |
| HERSHEY'S SYRUP (Stylized) | 3,742,491 | (Int'l Class: 30) Flavoring syrup; topping syrup |
| HERSHEY'S COCOA (Stylized) | 3,742,490 | (Int'l Class: 30) Cocoa |
| HERSHEY'S (Stylized) | 3,763,219 | (Int'l Class: 30) Candy; chocolate |
| HERSHEY'S SYRUP (Stylized) | 3,742,507 | (Int'l Class: 4) Candles |

17.     Hershey also enjoys valid and subsisting common law rights to the Hershey Trade Dress as a result of its extensive, continuous and exclusive use of such trade dress throughout the United States and Maryland to identify its products.

18.    Hershey's well-known products are widely advertised and sold throughout the United States, and worldwide, bearing the distinctive Hershey Trade Dress.  In particular, the Hershey Trade Dress has been used for over a century in connection with Hershey's iconic HERSHEY'S Milk Chocolate bar and HERSHEY'S Milk Chocolate with Almonds bar, as shown in the following current and past examples of Hershey's packaging for these enormously successful products:









19.     Moreover, the Hershey Trade Dress has been used for decades as Hershey's corporate logo, a current example of which is shown here:



20.     The Hershey Trade Dress also has been licensed and used by licensees for many years in connection with a wide variety of products, including books, promotional products and other goods.

21.     The Hershey Trade Dress is unique, distinctive and famous.  Hershey has made exclusive use of this trade dress in connection with its products and business, and has expended substantial efforts and sums of money to advertise and promote its products and business under this trade dress.  In addition, Hershey's print and television advertisements, as well as Hershey's website, www.hersheys.com, have and do prominently feature the Hershey Trade Dress.  As a result, the Hershey Trade Dress has become extremely well-known and famous among consumers, who have come to associate it with Hershey and to recognize Hershey as the exclusive source of products and services provided under this trade dress.  The Hershey Trade

Dress is strong and distinctive and is entitled to the fullest protection under the federal Lanham Act and state law.

22.     Hershey has acted with diligence in policing the unauthorized use and misuse by other parties of trademarks and trade dress similar to or identical to its Hershey Trade Dress, when such uses have come to Hershey's attention.

**Defendants' Unlawful Misappropriation of the Hershey Trade Dress**

23.     It recently has come to Hershey's attention that Defendants are using, and are intending to continue to use, a design that is confusingly similar to, and a colorable imitation of, the Hershey Trade Dress in connection with Senator Hershey's current campaign for the Maryland State Senate and with fundraising for that campaign.  Copies of an invitation to a party to raise funds for the campaign, and of a letter from Senator Hershey to The Hershey Company setting forth the design that he states he and Friends will use during the campaign and for fundraising for the campaign, are attached as Exhibits B and C.  On information and belief, Defendants have distributed the invitation and other uses of Defendants' infringing design in commerce, including in Maryland, to actual and prospective campaign contributors and to the general public, and intend to continue to do so in the course of Senator Hershey's campaign.

24.     Defendants' infringing design imitates and uses the Hershey Trade Dress in a manner that inevitably will cause a not insubstantial number of actual and potential purchasers to be confused into believing that Hershey has in some way sponsored, endorsed, authorized or otherwise is associated with Senator Hershey, his campaign and fundraising for his campaign.

25.     Defendants' infringing design, as shown below, consists almost entirely of the Hershey Trade Dress, and is designed to look like the iconic HERSHEY'S Milk Chocolate bar wrapper.  In addition to using the name HERSHEY in lightly colored block letters as is done in

the famous Hershey Trade Dress, the design uses a dark brown or dark maroon background as does the famous Hershey Trade Dress.  Below the name HERSHEY are the words STATE SENATE, which, like the Hershey name, are in lightly colored block letters and appear in a smaller font that mimics Hershey's use of terms such as "Milk Chocolate," "Cocoa" and "Syrup" in its trade dress:



26.     A side-by-side comparison of Defendants' design and the Hershey Trade Dress confirms that Defendants' design is an unlawful colorable imitation of, and is confusingly similar to, the Hershey Trade Dress:

 

27.     On information and belief, Defendants intend to use their infringing design during the campaign and for fundraising for the campaign in commerce, including in the State of Maryland and this Judicial District.

**Defendants' Broken Promises to Cease Use of the Hershey Trade Dress**

28.     In 2002, when Hershey learned of the use by Senator Hershey in his campaign for county commissioner of Queen Anne County of a design copying the Hershey Trade Dress, Hershey wrote to Senator Hershey asking that he stop using the Hershey Trade Dress.  When Senator Hershey continued to use the Hershey Trade Dress, Hershey wrote to him a month before the election, again demanding that he cease and desist.  On information and belief, Senator Hershey stopped using his infringing design for a period of time after the election.

29.     Eight years later, in 2010, it came to Hershey's attention that Senator Hershey again was using the Hershey Trade Dress, but this time the infringing design was used in connection with his campaign for State Delegate.  Hershey requested that Defendants cease use of the Hershey Trade Dress, which Defendants agreed to do.  Because Senator Hershey was in the midst of a campaign, Hershey accommodated him by agreeing that he could use his then-existing material for the primary election, but it demanded, and Senator Hershey agreed, that he would cease all use thereafter and would change the design of Defendants' campaign materials, "particularly the font and color," so as to be "materially different from" the Hershey Trade Dress (the "Agreement").  (A letter from The Hershey Company to Senator Hershey dated August 16, 2010, memorializing the terms of the Agreement, is attached as Exhibit D.)

30.     In reliance on the Agreement, Plaintiffs did not take further action against Defendants at that time.

31.     Plaintiffs learned that Defendants have not complied with the Agreement, and that

Defendants continued to use materials prohibited by the Agreement both in late 2010 and at least until late 2013.

32.    Various examples of designs that Defendants have used are set forth below:









33.     With a new election season upcoming following Senator Hershey's appointment

to a vacant Maryland State Senate seat, counsel for Hershey, on January 23, 2014, wrote to

Defendants, objecting to their use of a logo and design that mimicked the Hershey Trade Dress

(including on an invitation to a December 30, 2013 "Pre-Legislative Holiday Party" to raise

funds for the campaign, *see* Ex. B), and cautioning that if such conduct continued, Hershey

would consider legal action.

34.     Defendants did not respond to the January 23, 2014 letter from counsel for
Hershey.  Rather, on April 11, 2014, Senator Hershey sent an email to Hershey's director of
government relations, stating that Defendants are "gearing up for the June primary election" for
the Maryland State Senate and displayed a so-called "new design."  (*See* Ex. C hereto.)  That
design however, as shown above (¶ 26), blatantly knocks off the Hershey Trade Dress.

35.     Defendants attempted to justify the maroon background by claiming that it "uses
the Maryland flag."  The Maryland flag, however, contains four quadrants and is not maroon:



36.     Defendants also attempted to justify their choice of font by asserting that it is a
font available in Microsoft Word.  However, it is apparent that Defendants' choice of a sans serif
block typeface that is extremely similar to the typeface used in the Hershey Trade Dress –
particularly when used in a light color against a dark brown or dark maroon background – is
intentionally calculated to appear similar to the Hershey Trade Dress (and succeeds in doing so).

37.     Regardless of the alleged inspiration or source of the various elements of
Defendants' trade dress and logo, it is apparent that the overall resulting design is a confusingly

similar knockoff of, and unlawful colorable imitation of, the famous and iconic Hershey Trade Dress.

38.     Indeed, both news publications and individual residents of Maryland have commented, in the press and to Hershey, about the similarity of Defendants' past and current logos to the Hershey Trade Dress.  Online news publications, for example, have referred to Defendants' "brown campaign signs made to look like the popular chocolate bar" and to "Steve Hershey, who features a modified version of the chocolate bar in his campaign signs."

39.     Despite Hershey's recent communications with Defendants repeating Hershey's objections to Defendants' conduct, and despite recent statements by Defendants once again claiming a willingness to address Hershey's concerns, Hershey recently learned that Defendant has continued to order, obtain and distribute additional supplies of signage and other materials that use and imitate the Hershey Trade Dress.

**Likelihood of Confusion Resulting from Defendants'**
**Unauthorized Use of the Hershey Trade Dress**

40.     Defendants have not now and never have been authorized by Hershey or its affiliates to use the Hershey Trade Dress in connection with any of Senator Hershey's campaigns or fundraising for his campaigns.

41.     Defendants' use of the Hershey Trade Dress is likely to cause confusion, mistake or deception of purchasers and the consuming public as to the source, origin, sponsorship or approval of Senator Hershey, and his Friends of Steve Hershey organization and their campaign fundraising activities.  Actual and potential purchasers and consumers, upon encountering Defendants' design bearing the Hershey Trade Dress, are likely to mistakenly believe that Hershey has sponsored, endorsed, authorized or otherwise is associated with Senator Hershey, his campaigns and Defendants' fundraising for the campaigns, or that Senator Hershey is in

some way affiliated with Hershey.

42.     Defendants' acts are causing and will continue to cause damage and irreparable harm to Hershey and to its valuable reputation and goodwill with purchasers and consumers.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
### Infringement of Federally Registered Mark (15 U.S.C. § 1114(1)(a))

43.     Plaintiffs repeat and reallege paragraphs 1 through 42 of this Complaint as if fully set forth herein.

44.     This claim is for the infringement of trademarks registered in the United States Patent and Trademark Office, pursuant to Section 32(1) of the Lanham Act, 15 U.S.C. § 1114(1)(a), as amended.

45.     Defendants' design is confusingly similar to, and a colorable imitation of, the federally registered Hershey Trade Dress, and infringes the Hershey Trade Dress Registrations, including, among others, the United States registrations set forth in Paragraph 16 of this Complaint.   Defendants' unauthorized use of the Hershey Trade Dress is likely to cause confusion and mistake and to deceive the public as to the approval, sponsorship, affiliation, license, source or origin of Senator Hershey, his campaigns and fundraising for the campaigns.

46.     On information and belief, Defendants' acts of trademark infringement have been done willfully and deliberately and Defendants have benefited or will benefit from their unlawful use of the Hershey Trade Dress.

47.     Defendants' willful and deliberate acts described above have caused injury and damages to Plaintiffs, and have caused irreparable injury to Plaintiffs' goodwill and reputation, and, unless enjoined, will cause further irreparable injury, whereby Plaintiffs have no adequate remedy at law.

**SECOND CLAIM FOR RELIEF**
**False Designation of Origin and False Endorsement (15 U.S.C. § 1125(a))**

48.     Plaintiffs repeat and reallege paragraphs 1 through 47 of this Complaint as if fully set forth herein.

49.     This claim is for false designation of origin and false endorsement in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

50.     Defendants' unauthorized use of the Hershey Trade Dress as described above constitutes services within the meaning of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a). By reason of this unauthorized use, Defendants have falsely designated the origin of their services and have falsely represented that Hershey endorses or is somehow affiliated with Senator Hershey's campaigns and Defendants' fundraising for his campaigns, in violation of 15 U.S.C. § 1125(a).

51.     On information and belief, Defendants' acts of false designation of origin and false endorsement have been done willfully and deliberately and Defendants have benefited or will benefit from their unlawful acts of false designation of origin and false endorsement.

52.     Defendants' willful and deliberate acts described above have caused injury and damages to Plaintiffs, have caused irreparable injury to Plaintiffs' goodwill and reputation, and, unless enjoined, will cause further irreparable injury, whereby Plaintiffs have no adequate remedy at law.

**THIRD CLAIM FOR RELIEF**
**Trademark Dilution (15 U.S.C. § 1125(c))**

53.     Plaintiffs repeat and reallege paragraphs 1 through 52 of this Complaint as if fully set forth herein.

54.     This claim is for the dilution of trademarks pursuant to Section 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

55.     The Hershey Trade Dress is a distinctive and famous mark within the meaning of 15 U.S.C. § 1125(c)(1), and was distinctive and famous prior to the date of Defendants' adoption and use of the confusingly similar design in connection with Senator Hershey's campaigns and fundraising services for his campaigns.

56.     Defendants' conduct, as described above, is diluting and will dilute the distinctive quality of the famous Hershey Trade Dress and Hershey Trade Dress Registrations, thereby lessening the capacity of these marks to identify and distinguish products marketed and sold by Plaintiffs under these marks.

57.     To the extent that Defendants' services are viewed as being less than satisfactory to consumers, Plaintiffs' business reputation and goodwill and the reputation and goodwill of Plaintiffs' famous marks are being and will be tarnished and injured.

58.     On information and belief, Defendants' acts of dilution have been done willfully and deliberately and Defendants have benefited or will benefit from their unlawful use of the Hershey Trade Dress and colorable imitations thereof.

59.     Defendants' willful and deliberate acts described above have caused injury to and have damaged Plaintiffs' goodwill and reputation and, unless enjoined, will cause further irreparable injury, whereby Plaintiffs have no adequate remedy at law.

**FOURTH CLAIM FOR RELIEF**
**Common Law Trademark Infringement**

60.     Plaintiffs repeat and reallege paragraphs 1 through 59 of this Complaint as if fully set forth herein.

61.     This claim is for trademark infringement in violation of the common law of the State of Maryland.

62.     Defendants' use of the Hershey Trade Dress as described above has caused and is likely to cause confusion and to mislead and deceive purchasers and members of the trade and public, to damage Hershey's business reputation and goodwill, and to cause other injury and damage to Hershey.

63.     Defendants' use of the Hershey Trade Dress as described above constitutes trademark infringement in violation of common law.

64.     On information and belief, Defendants' acts of common law trademark infringement have been done willfully and deliberately and Defendants have benefited or will benefit from their unlawful use of the Hershey Trade Dress.

65.     Defendants' willful and deliberate acts described above have caused injury and damages to Plaintiffs, and have caused irreparable injury to Plaintiffs' goodwill and reputation and, unless enjoined, will cause further irreparable injury, whereby Plaintiffs have no adequate remedy at law.

## FIFTH CLAIM FOR RELIEF
### Breach of Contract

66.     Plaintiffs repeat and reallege paragraphs 1 through 65 of this Complaint as if fully set forth herein.

67.     Hershey has fully performed under the Agreement.

68.     As alleged above, Defendants breached the Agreement in bad faith.

69.     Defendants' acts, as described above, constitute breaches of the Agreement, including breaches of the covenant of good faith and fair dealing implied in the Agreement.

70.     Defendants' acts described above have caused injury to and have damaged Plaintiffs' goodwill and reputation and, unless enjoined, will cause further irreparable injury, whereby Plaintiffs have no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Hershey prays that this Court enter judgment against Defendants as follows:

A.      That judgment be entered in favor of Hershey;

B.      Granting preliminary and permanent injunctive relief restraining Defendants, their officers, directors, agents, employees, servants, attorneys, successors, assigns and others controlling, controlled by or affiliated with Defendants and all those in privity or active concert or participation with any of the foregoing, and all those who receive actual notice by personal service or otherwise:

(1)     from using, in writing or in any media, the Hershey Trade Dress, the Hershey Trade Dress Registrations, or any other trademark, trade dress or design comprising the word HERSHEY or HERSHEY'S in block text or on a brown or maroon background; and

(2)     from otherwise falsely stating, representing or suggesting that Hershey has sponsored, endorsed, authorized or otherwise is associated or affiliated with Senator Hershey, his campaigns or Defendants' fundraising for the campaigns;

C.      Ordering that Defendants be adjudged to have violated Sections 32, 43(a) and 43(c) of the Lanham Act, 15 U.S.C. §§ 1114, 1125(a) and 1125(c), and to have committed acts of trademark infringement and breach of contract in violation of common law;

D.     Ordering Defendants to pay for and cause to be disseminated corrective advertising to ameliorate the adverse consequences of Defendants' acts of trademark infringement, trademark dilution, false designation of origin, false endorsement, and breach of contract, the content, nature, form and extent of which is to be approved by Plaintiffs and this Court;

E.     Ordering Defendant to recall all advertisements, commercials, fundraising materials and other items, the dissemination by Defendants of which would violate the injunction herein granted;

F.     Ordering Defendants to deactivate all web sites and remove from the internet (or, as applicable, deliver up for destruction) any and all advertisements, commercials, photographs, fundraising materials and other items and matter in the possession, custody or control of Defendants which, if displayed or used, would violate the injunction herein granted;

G.     Ordering Defendants to pay for and cause to be disseminated to each person to whom Defendants sought funds for Senator Hershey's campaign using Defendants' infringing and deceptive design, a notice advising said persons of Defendants' acts of trademark infringement, trademark dilution, false designation of origin, false endorsement, and breach of contract and advising of the issuance and content of the injunction herein granted;

H.     Awarding such damages as Plaintiffs shall establish in consequence of Defendants' aforesaid acts of trademark infringement, trademark dilution, false designation of origin, false endorsement, and breach of contract, together with appropriate interest thereon, including three times the amount found as actual damages by the trier of fact to properly compensate Plaintiffs for their damages, pursuant to 15 U.S.C. § 111(a);

I.     Ordering that, pursuant to Section 34(a) of the Lanham Act, 15 U.S.C. § 1116(a), Defendants shall serve upon Plaintiffs within thirty (30) days after service on Defendants of an

injunction, or such extended period as the Court may direct, a report in writing under oath setting forth in detail the manner and form in which Defendants have complied with the injunction;

      J.      Awarding Plaintiffs their costs and expenses of this action;

      K.      Declaring that this is an exceptional case, pursuant to 15 U.S.C. § 1117, because of the willful and deliberate nature of Defendants' acts of trademark infringement, trademark dilution, false designation of origin and false endorsement, and awarding Plaintiffs their reasonable attorneys' fees;

      L.      Awarding Plaintiffs prejudgment and post-judgment interest on any monetary award in this action; and

      M.      Granting such other and further relief as this Court may deem just and proper.

Dated: June 6, 2014

                                        Respectfully submitted,

                                        Jeremy M. White (Bar Number 16422)
KAYE SCHOLER LLP
901 15th Street, NW
Washington, DC  20005
Telephone: (202) 682-3644
Facsimile: (202) 414-0329
jeremy.white@kayescholer.com

*Attorneys for Plaintiffs*

Of counsel:

Paul C. Llewellyn
Richard A. De Sevo
Kaye Scholer LLP
425 Park Avenue
New York, New York 10022
Telephone: (212) 836-8000
Facsimile: (212) 836-7154