IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

|  |  |  |
|---|---|---|
| THE HERSHEY COMPANY, et al., | * | |
| Plaintiffs, | * | |
| v. | * | CIVIL NO.: WDQ-14-1825 |
| FRIENDS OF STEVE HERSHEY, et al., | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

MEMORANDUM OPINION

The Hershey Company and Hershey Chocolate & Confectionery Corporation (collectively "Hershey" or "the Plaintiffs"), sued the Friends of Steve Hershey ("Friends") and Maryland Senator Steve Hershey (collectively "the Defendants") for trademark infringement and other claims.[1] Pending is the Plaintiffs' motion for a preliminary injunction. A hearing was held on July 16, 2014. For the following reasons, the Plaintiffs' motion for a preliminary injunction will be granted.

---

[1] The Plaintiffs assert five claims against the Defendants: (1) infringement of federally registered mark under 15 U.S.C. § 111(1)(a); (2) false designation of origin and false endorsement under 15 U.S.C. 1125(a); (3) trademark dilution under 15 U.S.C. § 1125(c); (4) common law trademark infringement; and (5) breach of contract. See ECF No. 1 ¶¶ 43-70.

I.    Background

    A.    The Hershey Trade Dress

Hershey, a manufacturer of candy and chocolate products sold under the HERSHEY's trademark, was founded in 1894. *See* ECF No. 7-2 ¶¶ 3-5. The Hershey Trade Dress is a design mark "consisting of a dark brown or dark maroon background color – commonly referred to as 'Hershey maroon' – and a silver or other light-colored font for the word mark HERSHEY'S (as well as other designations that play on the word mark HERSHEY'S), often with smaller text below the word mark HERSHEY'S." ECF No. 7 at 6; ECF No. 7-2 ¶¶ 3-5. Hershey Chocolate & Confectionery Corporation ("HC&CC") owns a number of federal trademark registrations for the Hershey Trade Dress. ECF No. 7-2 ¶ 4, Ex. 1.

Hershey's products are advertised and sold worldwide. ECF No. 7-2 ¶ 5. The Hershey Trade Dress has been used for over a century on Hershey's products. *Id.* Hershey spends hundreds of millions of dollars annually on television, print, and online to advertise products bearing the Hershey Trade Dress. *Id.* ¶ 8. Retail sales of Hershey's products have exceeded one billion dollars annually for the past decade. *Id.* ¶ 10. A 2014 brand health study listed Hershey's milk chocolate, bearing Hershey Trade Dress, as the top-ranked brand of chocolate candy. *See* ECF No. 7-2 ¶ 11. Hershey's market research shows over 90%

awareness of the Hershey's milk chocolate bar among U.S. consumers. *See* ECF No. 7-1 ¶ 12.

B. The Defendants' Campaign

In 2002, Steve Hershey ran for county commissioner of Queen Anne's County. ECF No. 7-3 ¶ 3. During that campaign, he used designs with a dark brown background with HERSHEY printed in bold white font. *Id.* ¶¶ 12-13. Hershey wrote to Mr. Hershey at the time asking him to stop his use of the Hershey Trade Dress in his campaign signage. *Id.* ¶ 13, Exs. 2, 3. Mr. Hershey stopped using the campaign materials after the elections. *Id.*

In 2010, Steve Hershey ran for state delegate using a campaign logo and signs featuring a similar brown background, bold white font, and a white border. ECF No. 7-3 ¶ 14. Hershey contacted Mr. Hershey about the use of the design, and accommodated him by allowing Mr. Hershey to use his existing materials for the primary election. *Id.* On August 16, 2010, Hershey sent a letter to Mr. Hershey itemizing terms agreed to in a phone conversation, specifically that Mr. Hershey would change the design of his materials for the general election, "particularly the font and color" so as to be "materially different from" the Hershey Trade Dress. ECF No. 7-3, Ex. 5.

In 2013, Steve Hershey was appointed to a vacant state senate seat. ECF No. 7-3 ¶ 15. In April 2014, Senator Hershey began campaigning for the state senate using a campaign logo

with a Maryland flag in dual tone brown as the background, the word HERSHEY in white Impact or Helvetica Nueue font, and STATE SENATE in smaller font below. ECF No. 7-3 ¶ 17, Ex. 9. The parties attempted to resolve the dispute about Senator Hershey's design. *See* ECF No. 7-3 ¶¶ 21-26, Exs. 10-11. During this time, several publications and members of the public noted the similarity between the Hershey Trade Dress and Senator Hershey's campaign materials. ECF No. 7-3 ¶ 12, Ex. 2.

C.  Procedural History

On June 6, 2014, the Plaintiffs sued the Defendants for federal trademark infringement, breach of contract, and related claims. ECF No. 1. On June 16, 2014, the Plaintiffs moved for a preliminary injunction. ECF No. 7. On July 3, 2014, the Defendants filed a motion to dismiss and opposition to the Plaintiffs' motion for a preliminary injunction. ECF No. 18. On July 7, 2014, the Plaintiffs replied. ECF No. 19. On July 7, 2014, the Defendants proposed a modified version of the signs which attached the phrase "Our Senator, not Big Chocolate . . . we're not confused" to the top of the signs. ECF No. 20. On July 10, 2014, the Plaintiffs responded to this proposed design. ECF No. 24. On July 14, 2014, the Defendants replied. ECF No. 26. On July 15, 2014, the Plaintiffs moved for leave to file a supplemental exhibit containing pictures of Senator Hershey's

signs with a red "THANK YOU" sign attached to the top corner. ECF No. 27.

II. Analysis

    A.   Preliminary Injunction Standard

A preliminary injunction is an "extraordinary remed[y] involving the exercise of very far-reaching power to be granted only sparingly and in limited circumstances." *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001) (internal quotation marks omitted). Because issuing a preliminary injunction "requires that a district court, acting on an incomplete record, order a party to act, or refrain from acting, in a certain way," "[t]he danger of a mistake in this setting is substantial." *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 693 (4th Cir. 1994) (internal quotation marks omitted).

To obtain a preliminary injunction, the movant must demonstrate that: (1) he is likely to succeed on the merits; (2) he is likely to suffer irreparable harm absent preliminary relief; (3) the balance of equities favors him; and (4) an injunction is in the public interest.[2] The movant must show more than a "grave

---

[2] *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Real Truth About Obama, Inc. v. Fed. Election Comm'n*, 575 F.3d 342, 346 (4th Cir. 2009), *vacated on other grounds*, 130 S. Ct. 2371, *reinstated in relevant part on remand*, 607 F.3d 355 (4th Cir. 2010) (per curiam).

or serious question for litigation"; instead, he bears the "heavy burden" of making a "clear showing that [he] is likely to succeed at trial on the merits." *Real Truth*, 575 F.3d at 347, 351. All four elements must be present. *Id.* at 346.

B. The Plaintiffs' Motion for a Preliminary Injunction

The Plaintiffs seek a preliminary injunction against the Defendants' use of "any trade dress, trademark or design" that is substantially similar to the Hershey trademarks, or "otherwise falsely stating, representing or suggesting that Plaintiffs have sponsored, endorsed, authorized or otherwise are associated or affiliated with Senator Hershey." ECF No. 7 at 2. The Plaintiffs also seek an order requiring the deactivation of all websites and Facebook pages and the removal of all violating trade dress from the internet; and the removal of all outdoor signs and posters with violating trade dress within five days. *See id.*

1. Likelihood of Success on the Merits

a. Trademark Infringement

The Plaintiffs assert a claim under Section 32 of the Lanham Act for trademark infringement. *See* ECF No. 1.[3] Trademark infringement requires the plaintiff to prove:

---

[3] Section 32 prohibits the use in commerce of "any reproduction, counterfeit, copy, or colorable imitation of a registered mark" in connection with any goods or services when it "is likely to

> (1) that it possesses a mark; (2) that the defendant used the mark; (3) that the defendant's use of the mark occurred "in commerce"; (4) that the defendant used the mark "in connection with the sale, offering for sale, distribution, or advertising" of goods or services; and (5) that the defendant used the mark in a manner likely to confuse consumers.

See *People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 365 (4th Cir. 2001); 15 U.S.C. § 1114, 1125(a). Trade dress infringement "focuses on the total image of the plaintiff's product, package and advertising and compares this with the defendant's image." *M. Kramer Mfg. Co., Inc. v. Andrews*, 783 F.2d 421, 448 n.25 (4th Cir. 1986).

                i.    Use of Mark In Commerce

There is no dispute that the Plaintiffs own numerous federal registrations covering the Hershey Trade Dress. *See* ECF No. 7-2 ¶ 4, Ex. 1. Additionally, the "in commerce" requirement of this section of the Lanham Act is a jurisdictional requirement rather than a commercial activity requirement.[4] Accordingly, the first and third elements of an infringement claim are met.

---

cause confusion, or to cause mistake, or to deceive." *See* 15 U.S.C. 1114(1).

[4] *See United We Stand Am., Inc. v. United We Stand, Am. New York, Inc.*, 128 F.3d 86, 92-93 (2d Cir. 1997) ("It appears that 'use in commerce' denotes Congress's authority under the Commerce Clause rather than an intent to limit the Act's application to profitmaking activity."); *Am. Family Life Ins. Co. v. Hagan*, 266 F. Supp. 2d 682, 694-95 (N.D. Ohio 2002) (noting the "in commerce" requirement is jurisdictional).

The Defendants argue that the second element has not been met because they "did not use the mark." ECF No. 18 at 19. The Defendants contend that their campaign signage is different from the Hershey Trade Dress. *See id.* The Defendants note that their design uses HERSHEY instead of HERSHEY'S, employs a "dual town brown" Maryland flag as the background, does not contain the words "Milk Chocolate", and uses different colors and font. *See* ECF No. 18 at 19-21. However, these slight differences do not bar an infringement claim when the overall appearance of the design is substantially similar. The marks "need only be sufficiently similar in appearance, with greater weight given to the dominant or salient portions of the mark." *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 936 (4th Cir. 1995). Section 32 prohibits more than use of the mark itself, and bars use of any "reproduction, counterfeit, copy, or colorable imitation of a registered mark" likely to cause confusion. *See* 15 U.S.C. 1114(1).

       ii. Likelihood of Confusion

The Defendants also argue that the design is not likely to cause confusion. ECF No. 18 at 25. Likelihood of confusion includes confusion about source and sponsorship. *Lone Star*, 43 F.3d at 933. The Fourth Circuit has identified nine factors for the Court to consider in determining whether there is a likelihood of confusion:

> (1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace; (2) the similarity of the two marks to consumers; (3) the similarity of the goods or services that the marks identify; (4) the similarity of the facilities used by the markholders; (5) the similarity of advertising used by the markholders; (6) the defendant's intent; (7) actual confusion; (8) the quality of the defendant's product; and (9) the sophistication of the consuming public.

*George & Co. LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 393 (4th Cir. 2009).

Here, the Hershey Trade Dress is a strong and distinctive mark. Courts look at factors such as advertising expenditures, consumer studies linking the mark to the source, sales records, and length and exclusivity of the plaintiff's use of the mark when considering the mark's strength. *See George & Co. LLC v. Imagination Entm't Ltd.*, 575 F.3d 383, 395 (4th Cir. 2009). Variations of the Hershey Trade Dress have been advertised and sold throughout the United States for over a century. *See* ECF No. 7-2 ¶¶ 4-5. Millions of consumers see television advertising for Hershey's products bearing Hershey Trade Dress. *See* ECF No. 7-2 ¶ 8. Annual retail sales for Hershey's products bearing the Hershey Trade Dress exceed one billion dollars annually. *See* ECF No. 7-2 ¶ 9. Hershey Trade Dress is also well-known and recognizable. A 2014 brand health study listed Hershey's milk chocolate, bearing Hershey Trade Dress, as the top-ranked brand of chocolate candy. *See* ECF No. 7-2 ¶ 11.

Hershey's market research shows over 90% awareness of the Hershey's milk chocolate bar among U.S. consumers. *See* ECF No. 7-1 ¶ 12.

Comparing the Hershey Trade Dress with Senator Hershey's promotional signs shows a substantial similarity. The Defendants' design uses the name HERSHEY in similar font and coloring to the Hershey Trade Dress. It also uses a background in similar coloring and the words STATE SENATE in similar lettering to Hershey's terms such as "Milk Chocolate." The Defendants' use of the Maryland flag, in dual brown tone, as the background does not differentiate the design. The Maryland flag design is subtle, and would likely be difficult to notice, especially when viewed on a lawn sign from a passing car. The difference in spelling between HERSHEY and HERSHEY'S also does not detract from the obvious similarity of the two designs.

The Defendants argue that there is no similarity between the campaign and Hershey's promotion, facilities, and advertising; and, therefore, there can be no confusion. ECF No. 18 at 26-27. Although the Court agrees that the public is not likely to confuse the Senator with a candy bar, the confusion requirement also encompasses confusion with respect to sponsorship or affiliation. "The public's belief that the mark's owner sponsored or otherwise approved the use of the trademark satisfies the confusion requirement." *Dallas Cowboys*

10

*Cheerleaders, Inc. v. Pussycat Cinema, Ltd.*, 604 F.2d 200, 205 (2d Cir. 1979). Hershey advertises its products nationwide, including within Senator Hershey's legislative district. On the basis of the substantially similar campaign design, a member of the public could easily -- and mistakenly -- believe that Senator Hershey is in some way affiliated with Hershey. Additionally, although evidence of actual confusion is not necessary,[5] the Plaintiffs have provided anecdotal evidence of confusion by the public. See ECF No. 7-3 ¶ 12.

In applying the above factors, the weight of the evidence demonstrates that the Plaintiffs have shown a likelihood of confusion.[6]

### iii. Use in Connection with Services

Lastly, the Defendants argue that they did not use the mark "in connection with the sale, offering for sale, distribution, or advertising of goods or services." See ECF No. 18 at 24. Courts have interpreted the term "services" broadly. See *Lamparello v. Falwell*, 420 F.3d 309, 314 (4th Cir. 2005). The

---

[5] *Lone Star*, 43 F.3d at 933 ("[T]his Court has emphasized that a trademark owner need not demonstrate actual confusion.").

[6] The Defendants offered to add a last minute disclaimer above the campaign's existing signage stating "Our Senator, not Big Chocolate . . . we're not confused." See ECF No. 20. The proposed design is still substantially similar to Hershey Trade Dress and the proposed disclaimer is vague, unclear, and would do little, if anything, to reduce public confusion with respect to Hershey's affiliation with Senator Hershey.

Lanham Act has "been applied to defendants furnishing a wide variety of non-commercial public and civic benefits." *United We Stand*, 128 F.3d at 90. Unlike a trademark dilution claim, a claim under Section 32 of the Lanham Act does not have a commercial activity requirement. See 15 U.S.C. § 1114(1)(a); 15 U.S.C. § 1125(c). Courts have interpreted the term "services" to include political activities.[7] Here, the Defendants used their design to promote a political candidate, disseminate political information, host campaign events, and solicit donations. Accordingly, the Defendants are using Hershey Trade Dress in connection with services.

iv.  First Amendment

To the extent that the Defendants argue that their use of the Hershey Trade Dress is protected by the First Amendment, that argument fails. When a defendant uses another entity's mark as part of a communicative message, it is entitled to First Amendment protection. *See Am. Family Life Ins. Co.*, 266 F. Supp. 3d at 699. However, that protection does not apply when

---

[7] *See Radiance Found., Inc. v. NAACP*, No. 2:13cv53, 2014 WL 2601747, at *8 (E.D. Va. June 10, 2014) ("'Services' are defined as 'a wide variety of non-commercial public and civic benefits,' including donation solicitation, event hosting, information dissemination and campaigning."); *United We Stand*, 128 F.3d at 90 (holding that an organization's activities in political organizing, issuing press releases, endorsing candidates and distributing political literature satisfied the "services" requirement for trademark infringement).

the trademark is used to associate a political candidate with a popular consumer brand. *See id.* Here, the Defendants are not using the Hershey Trade Dress for parody, political commentary, or other communicative purposes. *See United We Stand America*, 128 F.3d at 93 (use of the plaintiff's mark as a means of association is not protected by the First Amendment). Accordingly, their use is not entitled to First Amendment protections.

v.   Summary

Because the Plaintiffs have met the requirements of a trademark infringement claim, they have demonstrated likely success on the merits. As a result, the Court need not discuss the Plaintiffs' likelihood of success on the merits of their other claims.[8]

2.   Irreparable Harm

The Plaintiffs are also likely to suffer irreparable harm from the Defendants' continued use of Hershey's Trade Dress. In the context of a trademark infringement case, "irreparable harm regularly follows." *See Lone Star*, 43 F.3d at 939. "Generally, a finding of irreparable harm is automatic in a trademark infringement case where the trademark holder has demonstrated

---

[8] Because the Plaintiffs' have demonstrated a likelihood of success on the merits of their trademark infringement claim, the Court need not address the merits of the Plaintiffs' claims of trademark dilution, breach of contract, false designation of origin, or common law trademark infringement.

unlawful use and the likelihood of consumer confusion." *Prosperity Sys., Inc. v. Ali*, No. Y-98-3564, 2010 WL 5174939, at *5 (D. Md. Dec. 15, 2010).

Here, as discussed above, *supra* Part II.B.1.a, the Plaintiffs have demonstrated a likelihood of confusion. The public is likely to be confused about whether Hershey is affiliated with, or sponsoring, Senator Hershey based on his campaign signage. As a result, Hershey's reputation is no longer within its control. Because the Plaintiffs have shown a likelihood of confusion, they have also demonstrated that they are likely to suffer irreparable harm.[9]

### 3. Balance of Equities

The balance of equities also favors the Plaintiffs. The Plaintiffs' allegations establish that they are likely to suffer irreparable harm from the Defendants' continued unauthorized use of Hershey Trade Dress. On the other hand, the Defendants would be required to distribute new campaign materials for the general election at additional cost. Although the Defendants contend

---

[9] *See Merry Maids Ltd. P'ship v. Kamara*, 33 F. Supp. 2d 443, 445 (D. Md. 1998) ("Defendants' unauthorized use of plaintiff's trademarks gives rise to irreparable injury, in that plaintiff has lost control of its business reputation to this extent, there is a substantial likelihood of confusion of the purchasing public, there may be no meaningful monetary recovery available, and there is an inherent injury to the good will and reputation of the plaintiff.") (quoting *Long John Silver's, Inc. v. Washington Franchise, Inc.*, No. 8-540-A, 1980 WL 30249, at *12 (E.D. Va. June 24, 1980).

that an injunction would harm the voters' access to information, they have not identified information that they would be prevented from providing to voters. They have certainly not identified any voter information that can only be provided through the use of the Hershey Trade Dress.

The general election is still almost four months away, providing the Defendants with sufficient time to distribute non-infringing campaign materials. At the hearing, defense counsel made it clear that the general election is not expected to be seriously contested, this further demonstrates the minimal risk of harm to the Defendants in changing campaign materials.

Any harm that the Defendants may suffer will have been self-inflicted. *See Meineke Car Care Cntrs., Inc. v. Bica*, No. 3:11-cv-369-FDW-DCK, 2011 WL 4829420, at *4 (W.D.N.C. Oct. 12, 2011) (Self-inflicted harm is far outweighed by the damage done by the trademark infringement).

    4.   Public Interest

The public interest is served by preventing the confusion caused by trademark infringement. *See, e.g., Lone Star*, 43 F.3d at 939 (public interest served by preventing the public from being misled); *Merry Maids*, 33 F. Supp. 2d at 446 (public interest served in preventing public confusion). The Defendants argue that the public interest would not be served by a preliminary injunction because it would limit the Maryland

voters' access to information about the candidate. *See* ECF No. 18 at 35. The Defendants contend that this public interest outweighs the public interest furthered by an injunction. *See id.*

Again, the Defendants have not identified any information that the voters would be prevented from accessing as a result of a preliminary injunction. The proposed injunction would enjoin the Defendants from using, for their campaign, a design that is confusingly similar to the Hershey Trade Dress. However, the injunction would do nothing to prevent the Defendants from communicating with voters using other, non-infringing materials. The public has a strong interest in not being misled about whether Senator Hershey's campaign is affiliated with or sponsored in some way by the Hershey Company.

    5.    Summary

Having met the requirements, the Plaintiffs' motion for a preliminary injunction will be granted based on the likely success on the merits of their trademark infringement claim. The Defendants will be preliminarily enjoined from using a design in predominately dark brown or maroon with the word HERSHEY or HERSHEY'S, or the words on any background color in a font substantially similar to the Hershey Trade Dress, or any design that imitates the Hershey Trade Dress. The Defendants will also be enjoined from using any confusingly similar logo,

or otherwise falsely suggesting that the Plaintiffs have sponsored, endorsed, authorized, or otherwise are affiliated with Senator Hershey. The Defendants will be ordered to remove all infringing trade dress from the internet and all infringing outdoor signs and posters within five days.

III. Conclusion

For the reasons stated above, the Plaintiffs' motion for a preliminary injunction will be granted.

\_\_\_7/17/2014_____         _____/s/_____
Date                                          William D. Quarles, Jr.
                                              United States District Judge