IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF MARYLAND, NORTHERN DIVISION

| | | |
|---|---|---|
| THE HERSHEY COMPANY, *et al.*, | * | |
| Plaintiffs, | * | |
| | * | |
| v. | * | CIVIL NO.: WDQ-14-1825 |
| | * | |
| FRIENDS OF STEVE HERSHEY, *et al.*, | * | |
| Defendants. | * | |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

## MEMORANDUM OPINION

The Hershey Company and Hershey Chocolate & Confectionery Corporation (collectively "Hershey" or "the Plaintiffs"), sued the Friends of Steve Hershey ("Friends") and Maryland Senator Steve Hershey (collectively "the Defendants") for trademark infringement and other claims.[1]  Pending is the Defendants' motion to dismiss, or in the alternative, for summary judgment. No hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2011). For the following reasons, the Defendants' motion, construed as a motion to dismiss, will be denied.

---

[1] The Plaintiffs assert five claims against the Defendants:  (1) infringement of a federally registered mark under 15 U.S.C. § 111(1)(a); (2) false designation of origin and false endorsement under 15 U.S.C. 1125(a); (3) trademark dilution under 15 U.S.C. § 1125(c); (4) common law trademark infringement; and (5) breach of contract.  *See* ECF No. 1 ¶¶ 43-70.

I.   Background[2]

A.   The Hershey Trade Dress

Hershey is a manufacturer of candy and chocolate products sold under the HERSHEY'S trademark.  *See* ECF No. 1 (hereinafter, "Compl.") at 2-3.  The Hershey Trade Dress is a design mark "comprising a dark brown or maroon background color--commonly referred to as 'Hershey maroon'--and a silver or other light-colored block text for the word mark HERSHEY'S (as well as other designations that play on the word mark HERSHEY'S), often with smaller text below the word mark HERSHEY'S."  *Id.* at 3.  Hershey Chocolate & Confectionery Corporation ("HC&CC") owns a number of federal trademark registrations for the Hershey Trade Dress.  *See id.* at 4.

Hershey's products are advertised and sold worldwide.  Compl. at 9.  The Hershey Trade Dress has been used for over a century on Hershey's products.  *Id.* at 3.  Hershey "expend[s] substantial efforts and sums of money to advertise and promote its products and business under this trade dress."  *Id.* at 10.

---

[2] On a motion to dismiss, the well-pled allegations in the complaint are accepted as true.  *Brockington v. Boykins*, 637 F.3d 503, 505 (4th Cir. 2011).  The Court will consider the pleadings, matters of public record, and documents attached to the motions that are integral to the complaint and whose authenticity is not disputed.  *See Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

B.    The Defendants' Campaign

In 2002, Steve Hershey ran for county commissioner of Queen Anne's County.  Compl. at 13.  During that campaign, he used designs with a dark brown background with HERSHEY printed in a bold white font.  *See id.*; ECF No. 18 at 7 (Defendants' motion to dismiss).  Hershey wrote to Mr. Hershey asking him to stop his use of the Hershey Trade Dress in his campaign signage. Compl. at 13; ECF No. 18 at 8.  Mr. Hershey stopped using the campaign materials after the election.  *Id.*

In 2010, Steve Hershey ran for state delegate using a campaign logo and signs featuring a similar brown background, bold white font, and a white border.  Compl. at 13; ECF No. 18 at 8.  Hershey contacted Mr. Hershey about the use of the design, and accommodated him by allowing Mr. Hershey to use his existing materials for the primary election.  Compl. at 13. However, Hershey "demanded, and Senator Hershey agreed, that he would cease all use thereafter and would change the design of [the] Defendants' campaign materials, 'particularly the font and color,' so as to be 'materially different from' the Hershey Trade Dress."  *Id.*  On August 16, 2010, Hershey sent a letter to Mr. Hershey "memorializing the terms of the Agreement."  *Id.* "In reliance on the Agreement, [Hershey] did not take further action against [the] Defendants . . . ."  *Id.*

In 2013, Steve Hershey was appointed to a vacant state senate seat.  ECF No. 18 at 8.  In April 2014, Senator Hershey began campaigning for the state senate using a campaign logo with a Maryland flag in dual tone brown as the background, the word HERSHEY in white Impact or Helvetica Nueue font, and STATE SENATE in smaller font below.  ECF No. 18 at 9.  Hershey's counsel wrote to the campaign "objecting to their use of a logo and design that mimicked the Hershey Trade Dress . . . ."  Compl. at 15.  The parties attempted to resolve the dispute about Senator Hershey's design.  *See id.* at 15-17.  During this time, publications and members of the public noted the similarity between the Hershey Trade Dress and Senator Hershey's campaign materials.  *See id.* at 17.

C.   Procedural History

On June 6, 2014, the Plaintiffs sued the Defendants for federal trademark infringement, breach of contract, and related claims.  ECF No. 1.  On June 16, 2014, the Plaintiffs moved for a preliminary injunction.  ECF No. 7.  On July 3, 2014, the Defendants filed a motion to dismiss for failure to state a claim, or in the alternative, summary judgment and opposition to the Plaintiffs' motion for a preliminary injunction.  ECF No. 18.

On July 16, 2014, the Court held a preliminary injunction hearing.  ECF No. 28.  On July 17, 2014, the Court granted

4

Hershey's motion for a preliminary injunction.  ECF No. 29, 30.
The Court determined that Hershey's trademark infringement claim
under Section 32 of the Lanham Act was likely to succeed on the
merits because the Defendants' campaign symbol was substantially
similar to Hershey's trade dress and was likely to cause
confusion with respect to sponsorship or affiliation.  *Id.* at 6-
10.  On July 21, 2014, Hershey opposed the motion to dismiss.
ECF No. 31.  On August 7, 2014, the Defendants replied.

II.  Analysis

     A.   Legal Standard

     Under Fed. R. Civ. P. 12(b)(6), an action may be dismissed
for failure to state a claim upon which relief can be granted.
Rule 12(b)(6) tests the legal sufficiency of a complaint, but
does not "resolve contests surrounding the facts, the merits of
a claim, or the applicability of defenses."  *Presley v. City of
Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

     The Court bears in mind that Rule 8(a)(2) requires only a
"short and plain statement of the claim showing that the pleader
is entitled to relief."  *Migdal v. Rowe Price-Fleming Int'l
Inc.*, 248 F.3d 321, 325-26 (4th Cir. 2001).  Although Rule 8's
notice-pleading requirements are "not onerous," the plaintiff
must allege facts that support each element of the claim
advanced.  *Bass v. E.I. Dupont de Nemours & Co.*, 324 F.3d 761,
764-65 (4th Cir. 2003).  These facts must be sufficient to

"state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

This requires that the plaintiff do more than "plead[] facts that are 'merely consistent with a defendant's liability'"; the facts pled must "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*quoting Twombly*, 550 U.S. at 557). The complaint must not only allege but also "show" that the plaintiff is entitled to relief. *Id.* at 679 (internal quotation marks omitted). "Whe[n] the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not shown—that the pleader is entitled to relief." *Id.* (internal quotation marks and alteration omitted).

B.   The Defendants' Motion

"Summary judgment is appropriate only after adequate time for discovery." *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 961 (4th Cir. 1996) (internal quotation omitted); *see also Doe v. Abington Friends Sch.*, 480 F.3d 252, 257 (3d Cir. 2007) ("[B]y its very nature, the summary judgment process presupposes the existence of an adequate record."). "A district court therefore 'must refuse summary judgment where the nonmoving party has not had the opportunity to discover information that is essential to [its] opposition." *Greater*

6

*Balt. Ctr. for Pregnancy Concerns, Inc. v. Mayor & Cty. Council of Balt.*, 721 F.3d 264, 280 (4th Cir. 2013) (quoting *Nader v. Blair*, 549 F.3d 953, 961 (4th Cir. 2008)).

Here, although the Defendants assert that summary judgment is appropriate without discovery, their brief shows that discovery is necessary.  In one section, the Defendants assert that they are entitled to summary judgment because the "Plaintiffs have presented no surveys showing actual confusion; they have attached no affidavits or letters from consumers showing confusion . . ., nor have they provided data from focus groups."  ECF No. 18 at 30-31.  "Discovery is usually essential in a contested proceeding prior to summary judgment because '[a] party asserting that a fact . . . is genuinely disputed must support the assertion by,' inter alia, 'citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations ..., admissions, interrogatory answers, or other materials.'"  *Greater Balt. Ctr.*, 721 F.3d at 280 (quoting Fed. R. Civ. P. 56(c)(1)(A)).  Accordingly, the Court will construe the Defendants' motion as a motion to dismiss and not a motion for summary judgment.

1. Trademark Infringement under 15 U.S.C. § 111(1)(a)

The Plaintiffs assert a claim under Section 32 of the Lanham Act for trademark infringement.  *See* ECF No. 1.[3]

Trademark infringement requires the plaintiff to prove: (1) that it possesses a mark; (2) that the defendant used the mark; (3) that the defendant's use of the mark occurred "in commerce"; (4) that the defendant used the mark "in connection with the sale, offering for sale, distribution, or advertising" of goods or services; and (5) that the defendant used the mark in a manner likely to confuse consumers.  *See People for Ethical Treatment of Animals v. Doughney*, 263 F.3d 359, 365 (4th Cir. 2001); 15 U.S.C. § 1114, 1125(a).  Trade dress infringement "focuses on the total image of the plaintiff's product, package and advertising and compares this with the defendant's image." *M. Kramer Mfg. Co., Inc. v. Andrews*, 783 F.2d 421, 448 n.25 (4th Cir. 1986).

In granting Hershey's preliminary injunction, the Court determined that Hershey was likely to succeed on the merits on its trademark infringement claim.  *See* ECF No. 29.  The Court

---

[3] Section 32 prohibits the use in commerce of "any reproduction, counterfeit, copy, or colorable imitation of a registered mark" in connection with any goods or services when it "is likely to cause confusion, or to cause mistake, or to deceive."  *See* 15 U.S.C. 1114(1).

considered and rejected the Defendants' arguments, also present

in their motion to dismiss, that they did not "use" the

trademark and there was no likelihood of confusion. *See id.* at

6-10.  The Court found that all the elements of trademark

infringement were present and applied to the Defendants'

actions. *See id.*  Accordingly, the Court will not repeat that

discussion here and will deny the Defendants' motion to dismiss

Count I.

> 2. False Designation of Origin under 15 U.S.C.
>    § 1125(a)

Section 1125(a)(1) creates a civil cause of action against

> [a]ny person who, on or in connection with any goods
> or services, or any container for goods, uses in
> commerce any word, term, name, symbol, or device, or
> any combination thereof, or any false designation of
> origin, false or misleading description of fact, or
> false or misleading representation of fact, which--
>
> A.   is likely to cause confusion, or to cause
>      mistake, or to deceive as to the affiliation,
>      connection, or association of such person with
>      another person, or as to the origin, sponsorship,
>      or approval of his or her goods, services, or
>      commercial activities by another person, or
>
> B.   in commercial advertising or promotion,
>      misrepresents the nature, characteristics,
>      qualities, or geographic origin of his or her or
>      another person's goods, services, or commercial
>      activities . . .

Subsection A is a claim for "false association," and subsection

B is a claim for "false advertising."  *Lexmark Int'l, Inc. v.*

*Static Control Components, Inc.*, 134 S. Ct. 1377, 1384 (2014).

Hershey's claim is for false association. *See* ECF No. 31 at 11-12. "Under 15 U.S.C.A. § 1114(1), the test for trademark infringement is whether there is a likelihood of confusion of the counterfeit with the genuine goods.  Under 15 U.S.C.A. § 1125(a), the test is substantially the same, whether there is a confusing similarity between the two marks." *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir. 1987).

The Defendants do not argue that Hershey failed to plead confusion or infringement; instead, they argue that the false designation of origin and false endorsement claim must be dismissed because Hershey failed to allege proximate cause.  ECF No. 18 at 15.  Namely, that "consumers have withheld sales from [Hershey] because of any alleged confusion over the trademark." *Id*. at 15-16.  In the complaint, Hershey alleged that the "Defendant's willful and deliberate acts . . . have caused injury and damages to [the] Plaintiffs, [and] have caused irreparable injury to [the] Plaintiffs' goodwill and reputation . . . ."[4]  Compl. at 19.  Hershey asserts that this statement is sufficient to survive a motion to dismiss.  *See* ECF No. 31 at 10-12.

_____

[4] Hershey also stated that the Defendants' actions caused the public to believe that Hershey "endorses or is somehow affiliated with" the Defendants, prompting a loss of goodwill. *See* Compl. at 19.

In *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014), the Supreme Court examined the scope of § 1125(a). Lexmark, a manufacturer of laser printers and toner cartridges, sued Static Control for copyright violations. *Id.* at 1384. In order to ensure that its customers were only using toner cartridges supplied by Lexmark, the company had installed a microchip in the cartridges that disabled them when the toner ran out. *Id.* This prevented customers from selling the empty cartridges to remanufacturers for resale. *Id.* Lexmark also included "shrinkwrap licensing" on their cartridge packaging which essentially informed customers that they had agreed to return the cartridge to Lexmark when empty. *Id.* Static Control developed a microchip that could mimic the Lexmark chip, and allowed remanufacturers to purchase empty Lexmark cartridges from consumers for resale. *Id.* at 1384.

After Lexmark sued, Static Control counterclaimed, asserting that Lexmark had violated the false advertising provision of § 1125(a). *Id.* Static Control claimed that Lexmark had misled consumers into believing that they were required by a contract to return the cartridges, and had falsely informed remanufacturers that it was illegal to use Static Control's chip. *Id.* These misrepresentations allegedly injured Static Control's sales. *Id.*

The Supreme Court analyzed Static Control's right to sue under § 1125(a).  *Id.* at 1388.  The Court looked to the purpose of Section 45 of the Lanham Act codified at 15 U.S.C. § 1127:

> The intent of this chapter is to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce; to protect registered marks used in such commerce from interference by State, or territorial legislation; to protect persons engaged in such commerce against unfair competition; to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks; and to provide rights and remedies stipulated by treaties and conventions respecting trademarks, trade names, and unfair competition entered into between the United States and foreign nations.

The Court recognized that although "*[m]ost of the enumerated purposes are relevant to false-association cases*; a typical false-advertising case will implicate *only* the Act's goal of 'protect[ing] persons engaged in [commerce within the control of Congress] against unfair competition.'"  *Lexmark Int'l, Inc.*, 134 S. Ct. at 1389 (emphasis added).  Thus, the Court held "that to come within the zone of interests in a suit *for false advertising* under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales."  *Id.* at 1390 (emphasis added).

12

The Defendants argue that this holding applies equally to false association claims.  *See* ECF No. 18 at 16-17.  However, their dependence on *Lexmark* is misplaced.  The Supreme Court held that such an allegation was required because a false advertising suit only fulfilled one of the purposes of the Act, while false association suits fulfilled many purposes.  *Lexmark Int'l, Inc.*, 134 S. Ct. at 1389-90.  Here, Hershey's allegations achieve two of the Act's stated purposes: "to regulate commerce within the control of Congress by making actionable the deceptive and misleading use of marks in such commerce" and "to prevent fraud and deception in such commerce by the use of reproductions, copies, counterfeits, or colorable imitations of registered marks."  Hershey is within the Act's "zone of interest."  Thus, *Lexmark* does not require Hershey to plead withheld sales.[5]

Hershey is required to plead proximate cause.  It will have to show "economic or reputational injury flowing directly from" the Defendants' actions.[6]  *Lexmark Int'l, Inc.*, 134 S. Ct. at

---

[5] *See also  Match-E-Be-Nash-She-Wish Band of Pottawatomi Indians v. Patchak*, 132 S. Ct. 2199, 2210 (2012) ("[The zone of interest test] forecloses suit only when a plaintiff's 'interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that [Congress authorized suit" and "the benefit of any doubt goes to the plaintiff.").

[6] Proof of injury "occurs when deception of consumers causes them to withhold trade from the plaintiff."  *Lexmark Int'l, Inc.*, 134

1390.  In the complaint, Hershey pled damage to their goodwill and reputation.  Compl. at 19.  Although this may not be sufficient to ultimately succeed on their § 1125(a) claim, it is enough to survive a motion to dismiss before discovery. Accordingly, the Defendants' motion to dismiss Count II will be denied.

### 3. Trademark Dilution under 15 U.S.C. § 1125(c)

The Defendants argue that Count III of the complaint should be dismissed because their actions are protected by the "noncommercial" exception to the Lanham Act.  *See* ECF No. 18 at 13-15.

Section 1125(c)(3)(C) of the Act provides that "[a]ny noncommercial use of a mark" "shall not be actionable as dilution by blurring or dilution by tarnishment under this subsection."[7]  In *American Family Life Insurance v. Hagan*[8]--on which the Defendants rely--the Northern District of Ohio compared the "noncommercial exception" to the Act's requirement that the infringement occur "in commerce:"

---

S. Ct. at 1390.  However, the Court was referencing its prior "unfair competition" analysis, and followed this statement with a false advertising example.  *See id.*  Thus, "withheld sales" does not apply in this case.

[7] 15 U.S.C. § 1124(c)(3)(C).

[8] 266 F. Supp. 2d 682 (N.D. Ohio 2002).

> [a]s courts have noted, the "noncommercial use"
> exemption codified at § 1125(c)(4)(B) "presents a bit
> of a conundrum because it seems at odds with the
> earlier requirement [recited at § 1125(c)(1) ] that
> the junior use be a 'commercial use in commerce.' If a
> use has to be commercial in order to be dilutive, how
> then can it also be noncommercial so as to satisfy the
> exception of section 1125(c)(4)(B)?" *Mattel*, 296 F.3d
> at 904. The answer to this question is that, when
> Congress passed the Federal Trademark Dilution Act
> ("FTDA"), it used the phrase "noncommercial use" as a
> somewhat inexact, shorthand reference to "speech
> protected by the First Amendment."

*Hagan*, 266 F. Supp. 2d at 695.

Thus, even if the Court were to adopt *Hagan*'s interpretation of the noncommercial use exception, it would only apply if the Defendants' actions qualified as speech protected by the First Amendment. *See id.* In ruling on the preliminary injunction, the Court determined that the Defendants' use of the Hershey Trade Dress did not qualify as protected speech. *See* ECF No. 29 at 12. Accordingly, the Court will deny the Defendants' motion to dismiss Count III.

### 4. Maryland Trademark Infringement

Hershey's "claim of trademark infringement under federal law also suffices to establish its claim of trademark infringement under the common law of Maryland." *A.C. Legg Packing Co. v. Olde Plantation Spice Co., Inc.*, 61 F. Supp. 2d 426, 432 (D. Md. 1999); *see also Perini Corp. v. Perini Const., Inc.*, 915 F.2d 121, 125 n. 3 (4th Cir. 1990). Accordingly, the Court will deny the motion to dismiss as to Count IV.

5. Breach of Contract

To survive a motion to dismiss, "a [claim] for breach of contract must allege facts showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation." *See Swedish Civil Aviation Admin. v. Project Mgmt. Enter., Inc.*, 190 F.Supp.2d 785, 791 (D. Md. 2002) (*citing Cont'l Masonry Co., Inc. v. Verdel Constr. Co., Inc.*, 279 Md. 476, 480 (Md.1977)).  In Maryland, contract formation requires an offer, acceptance, and consideration.  *See Peer v. First Federal Sav. & Loan Ass'n of Cumberland,* 331 A.2d 299, 301 (Md. 1975).  An offer is a manifestation of willingness to enter into a contract and must have sufficiently definite terms.  *See Md. Supreme Corp. v. Blake Co.*, 369 A.2d 1017, 1023-24 (Md. 1977). Consideration is a bargained for exchange consisting of "a benefit to the promisor or a detriment to the promisee." *See Cheek v. United Healthcare of Mid-Atlantic, Inc.*, 835 A.2d 656, 661 (Md. 2003).

In this case, Hershey has alleged an oral agreement between the parties in which Mr. Hershey "would cease all use thereafter and would change the design of [the] Defendants' campaign materials" in exchange for Hershey's not pursuing legal action. Compl. at 13.  This agreement was confirmed in writing by

Hershey's counsel after the fact.[9]  *See id*.  These allegations sufficiently plead the formation of a contract.

The Defendants argue that even if there was a contract, it only applied to the 2010 election because the letter from Hershey's counsel stated that the Defendants "agree[d] to no longer use the trademarked design for any materials produced and/or distributed for the General Election."  ECF No. 1-1 at 22; ECF No. 18 at 32-33.  The Defendants, however, are confusing the letter with the oral agreement.  *See Royal Inv. Grp. LLC v. Wang*, 961 A.2d 665, 682 (Md. Ct. Spec. App. 2008) ("We agree with the trial court that, although the signed addendum was necessary to satisfy the Statute of Frauds, it was not the contract, but merely evidence of the oral contract.").  "[T]he existence and terms of an oral contract, when disputed, are for the trier of facts to determine;"[10] thus, resolving such a dispute is inappropriate on a motion to dismiss.

Hershey has properly alleged the formation of a contract, its terms, and breach.  Accordingly, the Court will deny the motion to dismiss as to the breach of contract claim.

---

[9] The August 16, 2010 letter by Hershey's counsel stated that the Defendants "agree[d] to no longer use the trademarked design for any materials produced and/or distributed for the General Election."  ECF No. 1-1 at 22.

[10] *Globe Home Improvement Co. v. McCarty*, 204 Md. 513, 517, 105 A.2d 216 (1954).

III. Conclusion

For the reasons stated above, the Defendants' motion to dismiss the complaint will be denied.

_2/24/15_
Date

_____
William D. Quarles, Jr.
United States District Judge